IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2015

## STATE OF TENNESSEE v. SEDDRICK CURRY

**Appeal from the Criminal Court for Shelby County**
**Nos. 13-03314, 13-04583     James C. Beasley, Jr., Judge**

---

**No. W2014-02104-CCA-R3-CD  -  Filed November 6, 2015**

---

The defendant, Seddrick Curry, pled guilty to two counts of aggravated burglary, a Class C felony; one count of theft of property valued at $10,000 or more but less than $60,000, a Class C felony; and one count of theft of property valued at $1000 or more but less than $10,000, a Class D felony.  He was sentenced as a career offender to serve an effective sentence of thirty years at 60%.  Subsequently, he filed a motion to withdraw his pleas of guilty, which was denied following a hearing.  He appealed, arguing that the trial court erred in denying his motion to withdraw the pleas.  Following our review, we affirm the order of the trial court denying the motion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROGER A. PAGE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Eugene L. Belenitsky, Memphis, Tennessee, for the appellant, Seddrick Curry.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant's indictments for aggravated burglary and theft arose from burglaries which he committed on December 5, 2012, and March 23, 2013.

As to the first set of offenses, resulting in pleas of guilty to aggravated burglary and theft over $10,000 in Case Number 13-03314, the State provided the following facts, to which the defendant stipulated:

[O]n December the 5th, 2012 Officers Lofton and Collins responded to a burglary call at 1009 Marcia after receiving a call [regarding] a prowler. There w[ere] two individuals in a white vehicle who were taking items from a house and putting them in the vehicle. Officers arrived on the scene and discovered a burglary, but the suspects were gone.

While officers were still on the scene, that white vehicle went towards them and then it turned off. Officers got behind it and the vehicle stopped. The vehicle was a white Pontiac Grand Prix. It showed registered to one of the codefendants[,] Reuben Johnson. The defendant . . . was the passenger.

Officers got a Consent to Search form signed by Mr. Johnson and located an Xbox inside the trunk. . . . [T]he Xbox contained Michael Butcher's profile information and that turned out to be the house where they had been seen.

Suspect Johnson made the utterance that he didn't go into the house. Defendant Curry denied any involvement. Victim stated that they had over $4,600 worth of items and only the Xbox was recovered.

As to the second set of offenses, resulting in pleas of guilty to aggravated burglary and theft over $1000 in Case Number 13-04583, the State recited the following facts, to which the defendant stipulated:

The facts on that would have been that on March the 23rd, 2013[,] officers responded to a prowler call and then it was upgraded to a burglary in progress at 3709 Kenwood. The victim Johnnie Cias (phonetic) advised that she was sitting in the residence when she saw a green van occupied by two male blacks in the . . . driveway of this particular house at 3709 Kenwood.

The suspects exited the vehicle, opened the rear of the van, and then observed [sic] the suspects go to the rear of 3709 Kenwood. . . . [W]itnesses observed suspect[s] take the TV from the home and place it in a van.

Officers (indiscernible) the prowler call and the description of the van. They saw the green van on . . . Highland and Shirlwood and Officer Moore reached his vehicle and the two individuals matching the description bailed and ran out of the van. Officers located them later and identified them as [the defendant] under a [b]lue Avalanche. Officers returned suspects to Officer Moore, who was able to positively identify them as the two individuals that ran from that vehicle.

At the submission hearing, responding to questions from the trial court, the defendant said that he understood with what he was charged, as well as to what he was pleading. He said he had no questions for the court in this regard. He said he knew he had a right to plead not guilty and go to trial, where he could testify if he wished but could not be made to do so. He understood that his lawyer could subpoena witnesses for a trial and would question witnesses who testified and that, if he chose not to testify, the jury would be instructed not to hold it against him. He was advised by the court of the specific punishments for each of the offenses and that he had a right to appeal a conviction, with counsel appointed. In a final series of questions from the trial court, the defendant said that he wished to waive his rights and plead guilty, that he was not being forced to do so, that no promises had been made to him in this regard, that he understood the convictions would go on his record and could affect future arrests, that he was satisfied with appointed counsel, and that he had no questions for the court. The court then found, based upon the defendant's responses, that he understood his rights and the process, that his pleas were free and voluntary, with no threats or coercion, and what the defendant wished to do. Further, the court found that the defendant had been represented by counsel under the guidelines required by law. Accordingly, the trial court accepted the defendant's pleas of guilty and sentenced him as previously set out. The court then was advised by the State that the defendant had entered an open plea, meaning that the lengths of the sentences, and their manner of service, would be determined by the court.

At the sentencing hearing, following the defendant's open plea to the charges, the trial court went to great lengths explaining the sentences and why the defendant's request for alternative sentencing was denied:

The Court does find that [the defendant] has an extensive record of previous history and criminal convictions in addition to that necessary to establish his range by law.

The Court finds that his prior convictions amount to a career offender status, and so the Court will impose the sentences imposed.

3

The Court now is asked to consider the Jericho Project which for purposes of the record is a mental health program that has been put together by the Public Defender's Office and working with other agencies to justify mental health treatment and counseling and a transition period that lasts I believe 120 days and then the follow-up would be with the agencies and supervision.

In this case, it would have to be under the community corrections act, which was set up to provide relief to individuals who do not otherwise qualify for probation because of their record.

I have been a very strong advocate of the Jericho Project and I have continued to work with the Public Defender's Office and the staff and the use of the Jericho Project. I think it serves a tremendous purpose within our community.

I think that mental health coupled with drug addiction are the two driving forces that . . . cause the bulk, and by that I mean a large percentage of the crimes that we face in Shelby County. People are either addicted to drugs and/or addicted to drugs and with mental health problems.

I am discouraged by the fact that every time we have cuts in funding that we cut back programs to help the mentally ill.

I believe that we should have more facilities available to assist people in rehabilitation to get them off of drugs and I believe that if we could control by medication or otherwise the mental illness and could get people off of drugs, we could greatly curtail crime in our community.

Unfortunately, we don't seem to be able to accomplish that and we are left with the alternative which is incarceration.

I'm very much aware of those. I have reviewed and looked at the sentencing considerations, the purposes for sentencing.

There is a strong outcry in our community for some type of deterrent factor and some type of issue to restrain defendants who continue to repeat and repeat and repeat offenses and violating the sanctity of the home by committing aggravated burglaries is a very serious offense.

And I'm very much disturbed by that and recognize it and so does the community, and recognize that it is a large problem, and I also recognize that a lot of it is often times driven by addiction to drugs.

However, there is still the problem that we have in dealing with attempting in some form or fashion to stop this plague of crime that we have in our community.

I am concerned with [the defendant's] very lengthy record and I am very much concerned that over the last five years now, we have a continual pattern of committing these offenses.

And in this particular series of cases, while on release he picks up several new offenses, while on bond, picks up several offenses, that's the reason why the Court's going to have to order that these two indictments, 13-04583 and 13-03314 have to be served consecutive[ly], by law, he was on bond at the time for one at the time that he committed the other.

I will order that counts one and two be served concurrently in each of those separate indictments and that the two series of indictments have to be served consecutively.

As to whether or not I think he needs mental health treatment, it would appear from the records that he does. As to whether or not I think that he is a proper candidate for community corrections and the Jericho Program, I'm sure that the Jericho Program could offer [the defendant] some things that would be of benefit to him, but listening to the testimony and reviewing the presentence report, reviewing the lengthy history, and the nature of the crimes that [the defendant] has been involved with and the pattern of repeating those while released under different types of supervision, this Court has a concern that [the defendant] will not comply with the conditions that are set for him, will not comply with the rules and regulations that are set out in probation, and find that – or with community corrections – I have a great deal of concern for that.

I do find that his record is extensive. I find that his previous actions and character weigh against him, the type of extraordinary relief, I do not find that he can reasonably be expected to be rehabilitated based upon his history over the last twenty years. And that during the period of time being asked for me to consider him being under supervision for the next thirty years, . . . I do find that the risk that he would violate this is great.

I do not find that I believe he would appear and abide by the terms of his probation for that period of time.

I do not feel that society will be protected while [the defendant] is out.

I think efforts have been made, maybe not the proper effort and maybe not sufficient efforts, but I think there has been some opportunities there.

I do think that placing him on community corrections would very much depreciate the seriousness of this offense, series of offenses, and would not deter others like [the defendant] who are involved in home burglaries from continuing to commit the offenses.

I wish that I had other alternatives to consider but I do not.

But having taken all of those factors into account and considering the law as I understand it to be, I do not find that [the defendant] is a proper candidate for community corrections under the circumstances and I am respectfully going to deny the request.

Subsequently, the defendant filed a motion to withdraw his pleas of guilty, asserting that his pleas were unknowing because he had done so believing that he would be placed in the Jericho Project of the Shelby County Public Defender's Office. At the subsequent evidentiary hearing, William Robilio testified that he was the Supervising Attorney for the Jericho Project and did not recall whether a defendant sentenced to a thirty-year sentence ever had been accepted into their program. He said that when the program receives a referral, it is subject to approval by the court and no advice is given as to the chances of placement in the program. As to the defendant in the present appeal, Mr. Robilio said that he had been accepted into the program, but the trial court had not yet approved his entry.

Trial counsel who represented the defendant on both cases testified that he had gone through each page of the presentence report with the defendant. The defendant told counsel that he wanted to investigate admission into the Jericho Project, with which he already was familiar. Initially, the defendant wanted to plead guilty to one of the indictments, but not the other, because he had an affidavit from his co-defendant, Alonzo Lee, which he believed exonerated him for that crime. However, Mr. Lee's attorney said the affidavit was signed under duress and, if called to the stand, his client would decline

6

to testify. Counsel discussed many times the Jericho Project with the defendant and told him it would be a "very close decision" as to whether he was admitted. Counsel told him the two avenues for him to get into the program were to be placed into community corrections or through a guilty verdict following a plea or as the result of a trial. Counsel told him that, following all that would come out during a trial, there was "no way" to gain entry if he followed that route. From the beginning, the defendant had said he did not want to go to trial.

During cross-examination, counsel said that the State did not agree to place the defendant into the Jericho Project. Counsel said that he "never promised" this to the defendant, and "[h]e was aware it was not guaranteed."

The defendant testified that trial counsel did not discuss with him whether he was a Range III or career offender. They did not go over his prior convictions and arrests. He said he had not known of the Jericho Project, and counsel told him about it. His counsel said that he could not get into the project unless he pled guilty. Counsel told him that the sentencing hearing was to determine whether he would be placed into the community corrections program and that, if he was not, then he could "start over, go to trial, do all of this other process stuff over." The defendant said he had completed the tenth grade and later received his GED. He suffered from depression and was "somewhat" schizophrenic.

Following the evidentiary hearing, the trial court entered written findings of fact and conclusions of law in which the court set out the background of the matter and concluded that the defendant's motion to withdraw his guilty pleas was denied:

> It appears to the Court that the [defendant] entered into a guilty plea. The plea was open to the Court with no negotiated amount of time. The Court advised the [defendant] of all of his rights at the time of the plea and the Court felt that the [defendant] fully understood his rights and waived said rights. Subsequently, the Court conducted a sentencing hearing at which time the Court determined that the [defendant] was a Career offender and that the offenses were committed while he was on bond for one of them. Therefore, the Court imposed a sentence of fifteen years in each case consecutive with each other. The [defendant] was seeking a Community Corrections sentence and admission into a program for mentally ill defendants, the Jeric[h]o Project. The Court denied the request and sentenced the defendant. Thereafter the [defendant] timely filed a Petition to Withdraw his Guilty Plea. At the conclusion of the hearing the Court found that the plea was freely and voluntarily entered with the advice of counsel, that the [defendant] knew what he was doing and that there was no

7

basis for allowing the plea to be withdrawn. The Court entered an Oral Finding of Fact and Conclusion of Law and hereby incorporates that ruling into this Order.

It is therefore the finding of this Court that the Petition to Withdraw the [Defendant's] Guilty Plea is not well taken and should be DENIED for the reasons set out in the Court's Oral Finding of Fact and Conclusion of Law hereby incorporated into this Order.

## ANALYSIS

On appeal, the defendant argues that the trial court abused its discretion in denying the motion because, according to his view, the court considered only one factor in determining whether a manifest injustice had occurred, while failing to consider the defendant's arguments that a fraud or mistake had occurred; the defendant did not knowingly or understandingly enter his pleas of guilty; and he was denied the effective assistance of counsel. The State disagrees with these arguments, as do we.

Tennessee Rule of Criminal Procedure 32(f)(1) provides that a trial court may grant a motion to withdraw a guilty plea "for any fair and just reason" before sentence is imposed, or to correct manifest injustice after the sentence is imposed but before the judgment becomes final. Granting a motion to withdraw a guilty plea to correct manifest injustice may be warranted where (1) the plea was entered as a result of fear, fraud, or misunderstanding; (2) the State failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963); (3) the plea was not knowingly, understandingly, and voluntarily entered; or (4) the defendant was denied the effective assistance of counsel in connection with entering the plea. State v. Crowe, 168 S.W.3d 731, 742 (Tenn. 2005). It is the defendant's burden of establishing that the plea of guilty should be withdrawn to prevent "manifest injustice." State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The decision whether to grant a motion to withdraw a plea of guilty rests with the sound discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Drake, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986).

To establish that he was denied the effective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the

defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

In the written order denying the motion to withdraw, the court also incorporated oral findings of fact and conclusions made by the court following the hearing. In those findings, the court explained the considerations in denying the defendant's earlier request to be placed into the Jericho Project:

> Upon reviewing the presentence report, the facts of the case, the defendant's extensive criminal history, the Court was of the opinion that alternative to incarceration was not proper in this case. Notwithstanding the mental illness issues that [the defendant] was suffering under, [the] Court did not feel that the Jericho Project was the proper sentence in this case and the Court denied the alternative to relief, denied Community Corrections, and denied his involvement in the Jericho Project.

The trial court accredited trial counsel's testimony at the evidentiary hearing over that of the defendant:

> Subsequent to that [the defendant] made a motion to withdraw his guilty plea. We had a hearing last week in which at that time again the Court heard from Mr. Robilio regarding the Jericho Project, heard from [trial counsel] regarding his efforts to get [the defendant] into the Jericho Project.
>
> It's obvious that [trial counsel] testified that he felt strongly that there was a good chance he could get [the defendant] into the Jericho Project but he advised [the defendant] throughout that it was a chance, that he'd have to petition the Court and that it was up to the Court.
>
> [The defendant] expressed that he understood that and was willing to go forward with the plea in an effort to attempt to get that into that program. It was very clear from all of the testimony that that was everybody's desire, that everybody indicated that it was always understood that it was going to be up to the Court to make that determination. The Court quite frankly did not feel that [the defendant] should be placed in that program.

The trial court did not find to be credible the defendant's testimony that he believed if he were not placed into the Jericho Program, he could then go to trial on his cases:

10

Within a timely fashion the defendant filed a motion to set aside his guilty plea. The only reason that I have heard from [the defendant] is that he understood that if I denied him Community Corrections and denied him access to the Jericho Project, he would start all over again and his case could be scheduled for trial and we would just go forward in the normal course of business.

This Court is satisfied that that's not true, that [the defendant] who is a career offender has been in this system for many, many years, is very familiar through pleas and otherwise how this system works. The Court was satisfied when the Court entered his guilty plea that he advised [the defendant] that he was giving up his right to go to trial, that he was waiving all of his trial rights and that [the defendant] fully understood that at the time he entered the plea. That's the only valid reason that I have heard as to why I should set aside this guilty plea.

His extensive record, the fact that he has had multiple opportunities in the past to go through the criminal justice system and been exposed multiple times to guilty pleas and how guilty pleas work, and the Court is of the opinion that [the defendant] unfortunately did not like the outcome of the probation hearing and rightfully so. I will not say that I don't blame him and I understand his being upset that he did not get to go into the Jericho Program. And I think at the time that I indicated for the record that I'm very receptive to that program and all the work that they're doing with the mentally ill and attempting to get them out of the cycle of the revolving door in and out of the criminal justice system. And I by no means was in any way slighting that system. I just did not feel that [the defendant] was a proper candidate for it and I said so at the time and I still feel that way.

And unfortunately, the only real legal argument that I have heard that I think merits anything is [the defendant is] not happy that he didn't get to go into the Jericho Project. I'm completely satisfied after my recollection quite frankly of his guilty plea and a review of the transcript indicates to me that [the defendant] fully understood what he was doing, fully understood the decisions that he was making, that he entered his guilty plea freely and voluntarily, no threats, no coercion with the understanding that he was going to be allowed to request extraordinary relief, which he did, which he was and which he did. And unfortunately for him he was denied that.

11

So I don't find that there's any valid reason under the rules of procedure that would cause me to find that [the defendant's] guilty plea was anything other than freely and voluntarily entered. And so for those reasons I am going to deny the motion to set the guilty plea aside.

Before accepting pleas of guilty from the defendant, the trial court went to great lengths to fully advise him as to the entire process and what his options were. Although the defendant was given the opportunity to ask questions regarding the matters, he responded that he had none to ask. The defendant's presentence report includes ten pages of prior convictions, beginning with his first series of arrests at age sixteen, including a conviction for aggravated robbery, netting him a sentence of eight years in the state penitentiary. Following his release on those convictions, he was arrested many times over the next two decades for a variety of criminal conduct, amassing enough convictions to be classified as a career offender. With all of his many arrests, it is obvious that he made a substantial number of court appearances and was familiar with the system. During his submission hearings, he was fully advised of his rights, the process was explained to him, and he advised the court that he had no questions. Considering all of this, and accrediting defense counsel, as the trial court did, the record easily supports the determination that a manifest injustice has not occurred and the defendant is not entitled to withdraw his pleas of guilty. Additionally, because the trial court accredited the testimony of trial counsel, the defendant failed to prove his ineffective assistance of counsel claim.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE

12